UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| ABRAAM SWEIHA,<br>    Plaintiff,<br>    v.<br>COUNTY OF ALAMEDA et al.,<br>    Defendants. | Case No. 19-cv-03098-LB<br><br>**ORDER GRANTING DEFENDANTS'**<br>**PARTIAL MOTION TO DISMISS**<br><br>Re: ECF No. 9 |

## INTRODUCTION

Plaintiff Abraam Sweiha, who has bipolar disorder, sued Alameda County deputies and Alameda County after the deputies responded to a 911 call, found him barricaded in his bedridden priest's bedroom, broke down the door, and deployed their police canine, who injured Mr. Sweiha's arm.[1] Thereafter, the deputies allegedly denied him appropriate treatment for his mental illness, which caused his condition to worsen and, among other things, resulted in his confinement for a week in the County jail, where he tried to commit suicide and was placed in a safety cell.[2]

In his complaint, Mr. Sweiha claims (1) excessive force in violation of the Fourth Amendment and 42 U.S.C. § 1983 (claim one), (2) unlawful policies and practices for treating mental-health

---

[1] Compl. – ECF No. 1 at 2 (¶¶ 1–3), 4 (¶¶ 17–19). Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.* at 4 (¶¶ 19–20).

ORDER – No. 19-cv-03098-LB

issues, in violation of § 1983 and *Monell v. Department of Social Services*, 436 U.S. 658 (1978), and Title II of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12132 (claims two and four), and (3) deliberate indifference to his serious medical needs, in violation of the Fourteenth Amendment and § 1983 (claim three).[3] The defendants moved to dismiss Mr. Sweiha's *Monell* and ADA claims.[4] The court can decide the motion without oral argument, N.D. Cal. Civ. L.R. 7-1(b), and grants the defendants' partial motion to dismiss without prejudice and with leave to amend (except that the court dismisses the ADA claims against the individual defendants with prejudice).

## STATEMENT

### 1. The Incident

In July 2017, plaintiff Abraam Sweiha, who has bipolar disorder, had an unspecified mental-health crisis while visiting his bedridden priest at the priest's home in Hayward, California.[5] After Mr. Sweiha locked himself in the bathroom for over an hour, his family friends called "emergency personnel" for help.[6] Mr. Sweiha subsequently moved to the priest's bedroom.[7]

Alameda County Sheriff Deputies Jeffrey Edwards, Russel Armstrong, Robert Garrigan, Payam Shannon, and Erich Marapao responded to the call.[8] Mr. Sweiha's family friend told the deputies that Mr. Sweiha "suffered from a mental illness, was weeping and locked himself in the bathroom for several hours, but was not violent or threatening anyone."[9] Inside the bedroom, Mr. Sweiha was "holding a cross and praying, afraid to face the Deputies in fear they were going to hurt him."[10] Moments later, "without any efforts to de-escalate the situation or coax Sweiha from

---

[3] *Id*. at 5–12 (¶¶ 23–47).
[4] Mot. – ECF No. 9.
[5] Compl. – ECF No. 1 at 2 (¶¶ 1–3), 4 (¶ 17).
[6] *Id.* at 4 (¶ 17).
[7] *Id.* (¶ 18).
[8] *Id.* (¶ 17).
[9] *Id.*
[10] *Id.* (¶ 18).

the room, Deputies Edwards, Armstrong, Garrigan, Shannon and Marapao broke down [the door] and set a canine on Sweiha."[11] The dog "immediately attacked Sweiha, biting him several times on his arm causing severe wounds even after the Deputies handcuffed him."[12] Only one deputy had his body camera on, but it malfunctioned, so there is no video footage.[13]

The deputies took Mr. Sweiha to the hospital, but "he was not treated for his mental illness or put on a [California Welfare and Institutions Code §] 5150 hold."[14] After the hospital discharged Mr. Sweiha, the deputies took him to the County jail, where — despite jail personnel's knowledge of his mental illness — his mental illness was not treated and worsened.[15] He spent a week at the jail, tried to commit suicide, was stripped naked (presumably because he was put in a safety cell), covered himself in his own feces and urine, refused to eat, was placed in a straitjacket, and ultimately was transferred to a psychiatric facility.[16]

### 2. Other Incidents

Mr. Sweiha's complaint sets forth the following allegations about the County's alleged wrongdoing:

> a. in 2010, Alameda Deputies were sued and settled a case where the accused deputy, along with other Alameda County deputies, piled on top of John Wayne McGee suffocating in a jail and suffocated him to death. (Case 3:12-cv-04286-JST). The same deputy was also sued again for a 2014 incident where he used a baton to savagely beat an unarmed woman causing a huge gash in her head that required eight staples. (Case 3:16-cv-05132-WHO).[17]

---

[11] *Id.*

[12] *Id.*

[13] *Id.* at 6 (¶ 28).

[14] *Id.* at 4 (¶ 19).

[15] *Id.*

[16] *Id.* (¶¶ 19–20).

[17] *Id.* at 6–7 (¶ 28(a)).

b. In January 2018, an Alameda County Sheriff's Deputy was arrested for retaliating against an inmate by ensuring that six other inmates had the opportunity and means to savagely beat the victim inmate.[18]

c. Alameda County Sheriff's Deputies Sarah Krause and Stephen Sarcos have also been recently charged and arrested for "a series of incidents in which deputies pushed an inmate to throw feces and urine onto other prisoners in November 2016."[19]

d. Alameda County Sheriff's Deputies Justin Linn and Erik McDermott also have recently been arrested and face "charges of felony assault under the color of authority, witness intimidation and conspiracy to obstruct justice."[20]

e. In 2017, Alameda County had to pay $5.5 million dollars when two Alameda County Sheriff's Deputies were caught on video striking a man, who was attempting to surrender, with batons more than 40 times.[21]

3. Procedural History

On June 4, 2019, Mr. Sweiha filed his complaint asserting the following claims: (1) excessive force in violation of the Fourth Amendment and 42 U.S.C. § 1983 (against the deputies); (2) an unconstitutional custom or policy under § 1983 and *Monell v. Department of Social Services*, 436 U.S. 658 (1978) (against the County and unnamed Doe officials); (3) deliberate indifference to his serious medical needs in violation of the Fourteenth Amendment and § 1983 (against the deputies and unnamed Doe personnel); and (4) a violation of the Title II of ADA, 42 U.S.C. § 12132, for failing to treat his mental-health crisis (against the individual defendants) and for failing to train (against the County and unnamed Doe officials).[22] The defendants moved to dismiss Mr. Sweiha's *Monell* and ADA claims.[23] All parties have consented to the undersigned's jurisdiction.[24]

---

[18] *Id.* at 7 (¶ 28(b)) (citing https://www.kqed.org/news/11642561/alameda-county-sheriffs-deputy-arrested-allegedly-set-up-inmate-beating/ last checked September 27, 2019).

[19] *Id.* (¶ 28(c)).

[20] *Id.* (¶ 28(d)).

[21] *Id.* (¶ 28(e)) (citing https://www.nbcbayarea.com/news/local/Stanislav-Petrov-Alameda-County-Sheriffs-Office-Reach-55-Million-Settlement-Over-2015-Beating-420778394.html last checked September 27, 2019).

[22] *Id.* at 5–12 (¶¶ 23–47).

[23] Mot. – ECF No. 9.

[24] Consents – ECF Nos. 7 and 11.

**STANDARD OF REVIEW**

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. *See* Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a claim for relief above the speculative level[.]" *Id.* (internal citations omitted).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which when accepted as true, "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 557).

If a court dismisses a complaint, it should give leave to amend unless the "pleading could not possibly be cured by the allegation of other facts." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1183 (9th Cir. 2016) (citations and internal quotation marks omitted).

**ANALYSIS**

**1. The *Monell* Claim for Municipal Liability**

Liability against a government entity starts from the premise that there is no respondeat superior liability under 42 U.S.C. § 1983, i.e., no entity is liable simply because it employs a person who has violated a plaintiff's rights. *See, e.g.*, *Monell v. N.Y.C. Dep't of Soc. Serv.*, 436 U.S. 658, 691 (1978); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Local governments can

be sued directly under § 1983 only if they maintain a policy or custom that results in a violation of plaintiff's constitutional rights. *Monell*, 436 U.S. at 690–91.

To impose *Monell* entity liability under § 1983 for a violation of constitutional rights, a plaintiff must show that (1) the plaintiff possessed a constitutional right and was deprived of that right, (2) the municipality had a policy, (3) the policy amounts to deliberate indifference to the plaintiff's constitutional right, and (4) the policy was the moving force behind the constitutional violation. *Plumeau v. Sch. Dist. No. 40 Cty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997).

The Ninth Circuit has explained how a policy may be established:

> There are three ways to show a policy or custom of a municipality: (1) by showing "a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity;" (2) "by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision;" or (3) "by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate."

*Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (quoting *Ulrich v. City and Cty. of San Francisco*, 308 F.3d 968, 984–85 (9th Cir. 2002)); *accord, e.g.*, *Parker v. City of Pittsburg*, No. 17-cv-01563-LB, 2017 WL 2986225, at *5 (N.D. Cal. July 13, 2017) (applying standard on a motion to dismiss).

Mr. Sweiha claims a *Monell* violation based on (1) a long-standing practice and custom, including a failure to train, and (2) ratification of the deputies' actions.[25]

### 1.1 Longstanding Practice or Custom

#### 1.1.1 Governing law

To plead a *Monell* claim through a "longstanding practice or custom," the "practice or custom must consist of more than 'random acts or isolated events' and instead, must be the result of a 'permanent and well-settled practice.'" *Parker*, 2017 WL 2986225, at *5 (citing *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443–44 (9th Cir. 1998), *overruled on other grounds by Bull v.*

---

[25] Compl. – ECF No. 1 at 6–9 (¶¶ 26-38); Opp'n – ECF No. 13 at 3–8. Mr. Sweiha does not allege a violation based on the second way to show a policy or custom: "when the person causing the violation has final policymaking authority." *Webb v. Sloan*, 330 F.3d 1158, 1164 (9th Cir. 2003) (citation omitted).

ORDER – No. 19-cv-03098-LB       6

*City and Cty. of San Francisco*, 595 F.3d 964 (9th Cir. 2010)). "[T]he custom must be so 'persistent and widespread' that it constitutes a 'permanent and well settled city policy." *Leon v. Hayward Bldg. Dep't*, No. 17-cv-02720-LB, 2017 WL 3232486, at *3 (N.D. Cal. July 31, 2017) (some internal quotation marks omitted) (quoting *Hunter v. Cty. of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011)). "'Isolated or sporadic incidents,' by contrast, will not support *Monell* liability against a municipality." *Id.* (quoting *Hunter*, 652 F.3d at 1233).

"'In limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983.'" *Heyward v. BART Police Dep't*, No. 3:15-cv-04503-LB, 2016 WL 730282, at *6 (N.D. Cal. Feb. 24, 2016) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). "'A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train.'" *Id.* (quoting *Connick*, 563 U.S. at 61). "'To satisfy [§ 1983], a municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact.'" *Id.* (internal brackets and some internal quotation marks omitted) (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)). "Only then 'can such a shortcoming be properly [thought] of as a city policy or custom that is actionable under § 1983.'" *Id.* (some internal quotation marks omitted) (quoting *City of Canton*, 489 U.S. 378, 389 (1989)).

"'Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* (internal brackets and some internal quotation marks omitted) (quoting *Bd. of Comm'rs v. Brown*, 520 U.S. 397, 410 (1997)). "'Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program.'" *Id.* (quoting *Connick*, 563 U.S. at 61). "'The city's policy of inaction in light of notice that its program will cause constitutional violations is the functional equivalent of a decision by the city itself to violate the Constitution.'" *Id.* (some internal quotation marks omitted) (quoting *City of Canton*, 489 U.S. at 389 (1989)). "'A less stringent standard of fault for a failure-to-train claim

would result in de facto respondeat superior liability on municipalities[.]'" *Id.* (some internal quotation marks omitted) (quoting *City of Canton*, 489 U.S. at 389). "Thus, 'a pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train.'" *Id.* (internal brackets and some internal quotation marks omitted) (quoting *Connick*, 563 U.S. at 62). "'Policymakers' continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action — the deliberate indifference — necessary to trigger municipal liability.'" *Id.* (some internal quotation marks omitted) (quoting *Connick*, 563 U.S. at 62). "'Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.'" *Id.*

### 1.1.2 Application

Mr. Sweiha alleges that his own experiences with the deputies and the five other incidents described in the complaint show a course of conduct amounting to "a custom, policy or repeated practice of condoning and tacitly encouraging the abuse of police authority, and disregard for the constitutional rights of citizens."[26] They do not. The five incidents have markedly different facts, do not involve mistreating someone with mental illness, and in any event do not show a "custom [that is] so 'persistent and widespread' that it constitutes a 'permanent and well settled city policy," as opposed to "[i]solated or sporadic incidents, [which] will not support *Monell* liability against a municipality." *Cf. Leon*, 2017 WL 3232486, at *3 (granting motion to dismiss *Monell* claim); *see Estate of Mendez,* --- F. Supp. 3d ----, No. 1:18-cv-01677-LJO-BAM, 2019 WL 2715615, at *13 (E.D. Cal 2019) ("'[T]he identified deficiency in a local governmental entity's training program must be closely related to the ultimate injury.'") (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001)).

Mr. Sweiha also advances a failure-to-train argument, presumably on the theory that the other lawsuits should have put the County on notice that it had to train its deputies better. This argument

---

[26] Compl. – ECF No. 1 at 6-9 (¶¶ 26-38).

fails. *See Flores v. Cty. of Los Angeles*, 758 F.3d 1154, 1159 (9th Cir. 2014) (affirming dismissal of *Monell* claim and holding that "isolated incidents of criminal wrongdoing by one deputy other than [defendant deputy] do not suffice to put the County or [Sheriff] on 'notice that a course of training is deficient in a particular respect,' nor that the absence of such a course 'will cause violations of constitutional rights'") (quoting *Connick*, 563 U.S. at 1361).[27]

### 1.2 Delegation and Ratification

#### 1.2.1 Governing law

To state a *Monell* claim through delegation, a plaintiff must show that an official with policymaking authority delegated "final policymaking authority" as opposed to merely delegating discretion to act. *Christie*, 176 F.3d at 1236 (citing cases). "In making these determinations, courts consider whether the official's discretionary decision is 'constrained by policies not of that official's making' and whether the official's decision is 'subject to review by the municipality's authorized policymakers.'" *Id.* at 1236–37 (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (plurality op.)).

To plead a *Monell* claim through ratification, "a plaintiff must show that the 'authorized policymakers approve[d] a subordinate's decision and the basis for it.'" *Dasovich v. Contra Costa Cty. Sheriff's Dep't*, No. 14-cv-00258-MEJ, 2014 WL 4652118, at *6 (N.D. Cal. Sept. 17, 2014) (quoting *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004)). "The policymaker must have knowledge of the constitutional violation and actually approve of it." *Id.* (citing *Lytle*, 382 F.3d at 987). "A mere failure to overrule a subordinate's actions, without more, is insufficient to support a § 1983 claim." *Id.* (citing *Lytle* 382 F.3d at 987); *accord, e.g.*, *Estate of Adomako v. City of Fremont*, No. 17-cv-06386-DMR, 2018 WL 2234179, at *3 (N.D. Cal. May 16, 2018) ("A police department's 'mere failure to discipline its officers does not amount to ratification of their

---

[27] Mr. Sweiha also contends that a relaxed pleading standard applies to *Monell* claims comprised of allegations made on information and belief, citing unpublished district court cases in support of this position. Opp'n – ECF 13 at 3–4. This is contrary to this district's precedent. *Cardenas v. Cty. of Alameda*, No. C 16-05205 WHA, 2017 WL 1650563, at *5 (N.D. Cal. May 2, 2017) (rejecting a relaxed pleading standard); *Wilson v. Town of Danville*, Case No. 17-cv-00863-DMR, 2017 WL 2335545 at *2-4 (N.D. Cal. May 30, 2017) (dismissing claims based on information and belief as conclusory).

ORDER – No. 19-cv-03098-LB 9

allegedly unconstitutional actions.'") (internal brackets omitted) (quoting *Sheehan v. City and Cty. of San Francisco*, 743 F.3d 1211, 1231 (9th Cir. 2014), *rev'd in part, cert. dismissed in part*, 135 S. Ct. 1765 (2015)).

### 1.2.2 Application

Mr. Sweiha does not plausibly plead a *Monell* claim based on delegation or ratification. His main allegation about ratification is the following: "Plaintiff is informed and believes and thereon alleges that Defendants . . . approved, ratified, condoned, encouraged and/or tacitly authorized the continuing pattern and practice of misconduct."[28] This allegation is conclusory, and (as discussed in the previous section), the other incidents are dissimilar and do not establish ratification. Mr. Sweiha also contends that Alameda County did not discipline the deputies,[29] but a failure to discipline does not, without more, plead ratification. *See Dasovich*, 2014 WL 4652118, at *6 (granting motion to dismiss *Monell* claim where plaintiff failed to allege affirmative action by a policymaker, as opposed to merely a failure to discipline).

\* \* \*

Mr. Sweiha has not pleaded a cognizable *Monell* claim. The court grants the defendants' motion to dismiss the claim.

## 2. The ADA Claim[30]

### 2.1 Governing Law

Title II of the ADA provides that: "No qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The ADA prohibits public entities from discriminating against the disabled and

---

[28] Compl. – ECF No. 1 at 7 (¶ 29).

[29] *Id*. at 6–7 (¶ 28), 8–9 (¶¶ 34–35), 11 (¶ 45).

[30] The parties agree that only public entities may be sued for violating § 12132 of the ADA. *See* Mot. – ECF No. 9 at 8; Opp'n – ECF No. 13 at 11. The court thus dismisses the ADA claim with prejudice as to the individual defendants.

also prohibits public entities from excluding the disabled from participating in or benefitting from a public program, activity, or service "solely by reason of disability." *Lee v. City of Los Angeles*, 250 F.3d 668, 690–691 (9th Cir. 2001) (quoting *Weinreich v. L.A. County Metro. Transp. Auth.*, 114 F.3d 976, 978–79 (9th Cir. 1997)). "Discrimination includes a failure to reasonably accommodate a person's disability." *Sheehan v. City & Cty. of San Francisco,* 743 F.3d 1211, at 1231.

"To recover monetary damages under Title II of the ADA, a plaintiff must prove intentional discrimination on the part of the defendant." *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001) (citing *Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998)). To prove intentional discrimination, the plaintiff must show defendants acted with "deliberate indifference." *Id.* at 1139. Deliberate indifference requires "both 'some form of notice . . . and the opportunity to conform to [statutory] dictates.'" *Id.* (citing *City of Canton*, 489 U.S. at 389). The plaintiff must identify "specific reasonable" and "necessary" accommodations that the defendant failed to provide. *Id.* (citing *Memmer v. Marin Co. Courts*, 169 F.3d 630, 633 (9th Cir. 1999). "When the plaintiff has alerted the public entity to his need for accommodation (or where the need for accommodation is obvious, or required by statute or regulation), the public entity is on notice that an accommodation is required, and the plaintiff has satisfied the first element of the deliberate indifference test." *Id.*

"[D]eliberate indifference does not occur where a duty to act may simply have been overlooked. *Id.* "Rather, in order to meet the second element of the deliberate indifference test, a failure to act must be a result of conduct that is more than negligent, and involves an element of deliberateness." *Id.*

### 2.2 Application[31]

To support his ADA claim, Mr. Sweiha alleges the following:

---

[31] The parties have not asserted either way whether Mr. Sweiha is a qualified individual with a disability as defined under 42 U.S.C. 12102(2)(A) (a "disability" is a physical or mental impairment that substantially limits one or more of the major life activities of such individual." For purposes of this order, the court assumes Mr. Sweiha is a qualified individual with a disability.

> 45. [The County and the Doe official policy-makers] failed to train, supervise, and or discipline Defendants and DOES 1–25: in recognizing symptoms of bipolar disorder and schizophrenic tendencies under Title II of the Americans With Disabilities Act and from excluding qualified individuals, such as Abraam Sweiha, from participating in or denying benefits and services provided by Defendant COUNTY; or from otherwise discriminating against such qualified individuals with symptoms of disability recognized under Title II of the Americans with Disabilities act, resulting in the use of force against Abraam Sweiha, during the course of the subject-incident, and afterwards in denying him medical treatment in jail that resulted in him refusing to eat, covering himself in feces and urine, and being placed in a straightjacket.
>
> 46. [A]t the time [the individual deputies and the Doe jail personnel] made contact with Sweiha they knew and/or had reason to know from bystanders that he was experiencing a mental crisis and were aware of his disability and the symptoms and manifestations of Sweiha's recognized disability of bipolar disorder, and yet these Defendants and DOES 1-25 decided to escalate immediately to the use of force against him, not provide him mental health treatment and continue to deny him in custody mental health treatment. In addition, these Defendants failed to provide reasonable accommodations during their encounter and arrest of Sweiha by failing to contact an emergency medical services provider to transport to a psychiatric hospital. Defendants further failed to provide Sweiha any mental health treatment while in custody permitting his condition to worsen then unreasonably restrained him in straightjacket and permitted him to cover himself in urine and feces.[32]

Mr. Sweiha does not allege facts that plausibly establish that the defendants' use of force and subsequent treatment violated the ADA, primarily because his allegations do not plausibly show that the defendants acted intentionally, meaning, with deliberate indifference, by withholding mental-health services, or that his disability was "the motivating factor" for the exclusion from any program or benefit. *England v. Horel*, No. C 10–153 SI, 2012 WL 4112950, at *4 (N.D. Cal. Sept. 18, 2012); *see Anderson v. Cal. Dep't of Corr. & Rehab.*, No. 15-cv-02013-MEJ, 2016 WL 7013246, at *2 (N.D. Cal. Dec. 1, 2016) (dismissing an ADA claim because "Plaintiff has failed to plead the factual content that would allow the Court to draw the reasonable inference that the failure was intentional, rather than inadvertent"); *accord Sullivan v. City of Berkeley*, No. C 17-06051 WHA, 2018 WL 489011, at *4 (N.D. Cal. Jan. 19, 2018) (general allegations that

---

[32] ECF No. 1 at 11 (¶¶ 45–46).

defendants do not evaluate or accommodate individuals with disabilities is insufficient to show how plaintiff was "excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or otherwise discriminated against by the public entity").

Moreover, the jail transferred Mr. Sweiha to a psychiatric facility within a week. This bolsters the conclusion that the fact allegations do not reflect deliberate indifference and instead (at best) show "bureaucratic slippage that constitutes negligence" that is not actionable under the ADA. *Updike* at 952; *compare Anderson v. County of Siskiyou*, No. C 10-01428 SBA, 2010 WL 3619821, at *5 (N.D. Cal. Sept. 13, 2010) (the plaintiff stated a cognizable ADA claim by alleging "that Defendants failed to provide [plaintiff] with any access to mental health programs and services" because plaintiff had alleged an "outright denial of medical services").

\* \* \*

Mr. Sweiha has not pleaded a cognizable claim under Title II of the ADA. The court grants the defendants' motion to dismiss the claim.

### 3. Remaining Claims Against the Individual Defendants In Their Official Capacity

The defendants move to dismiss the claims against the defendants to the extent that the claims are brought against them in their official capacity.[33] Mr. Sweiha opposes the motion only on the ground that he asks for injunctive relief for the *Monell* claim.[34] Because the court dismisses the *Monell* claim, it grants the defendants' motion to dismiss.[35]

---

[33] Mot. – ECF No. 9 at 4.

[34] Opp'n – ECF No. 13 at 11.

[35] The complaint does allege that the five deputies are sued in their individual and official capacities. Compl. – ECF No. 1 at 3 (¶¶ 8–12). But given that Mr. Sweiha raises only the *Monell* argument, the court assumes that — as is customary — the individual defendants are sued only in their individual capacities and that Mr. Sweiha resists only the dismissal of individual policy makers.

## CONCLUSION

The court grants the defendants' partial motion to dismiss without prejudice and with leave to amend (except that the court dismisses the ADA claims against the individual defendants with prejudice). Mr. Sweiha may file an amended complaint by October 24, 2019. If Mr. Sweiha files an amended complaint, he must file as an attachment a blackline of his new amended complaint against his First Amended Complaint.

**IT IS SO ORDERED.**

Dated: October 1, 2019

_____
LAUREL BEELER
United States Magistrate Judge