1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

ABRAAM SWEIHA,

            Plaintiff,

    v.

COUNTY OF ALAMEDA, et al.,

            Defendants.

Case No. 19-cv-03098-LB

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Re: ECF No. 60

## INTRODUCTION

Alameda County deputies responded to a 911 call after the plaintiff Abraam Sweiha — who suffers from bipolar disorder — barricaded himself in his bedridden priest's bedroom. The police used a police dog to restrain Mr. Sweiha. Mr. Sweiha concedes that the decision to deploy the dog was reasonable, but he contends that (1) Deputy Edwards caused the dog to bite him after he surrendered, which was excessive force that violated the Fourth Amendment and 42 U.S.C. § 1983, and (2) the continued force failed to accommodate his mental-health condition, in violation of Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132.[1] The deputies moved for summary judgment on the excessive-force claim on the grounds that the force was reasonable

---

[1] Second Am. Compl. (SAC) – ECF No. 24. Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

1    and they in any event are entitled to qualified immunity. The County moved for summary

2    judgment on the ADA claim on the ground that the deputies were not deliberately indifferent, in

3    part given their use of de-escalation techniques.[2]

4        The court grants summary judgment on the excessive-force claim to all deputies but Deputy

5    Edwards because they are entitled to qualified immunity. The court denies Deputy Edwards'

6    motion for summary judgment on the excessive-force claim because disputes of fact exist about

7    whether Deputy Edwards deliberately sicced his dog on Mr. Sweiha after he surrendered. The

8    court grants summary judgment to the County on the ADA claim because there is no evidence that

9    any of the deputies acted with the requisite scienter for an ADA claim.

10

11                                    **STATEMENT**

12       On February 9, 2017, at around 2:40 p.m., Alameda County deputy sheriffs — including

13   named defendants Jeffrey Edwards, Russel Armstrong, Robert Garrigan, Payam Shannon, and

14   Erich Marapao — responded to a 911 call from a home in Hayward, California. Matthias Wahba,

15   an elderly priest, and his wife Nadia Eid lived there. The 911 dispatcher told the deputies that Mr.

16   Sweiha had broken into the residence, vandalized its interior, and locked himself in the bathroom.[3]

17   When the deputies arrived, Mr. Sweiha's friends and Ms. Eid told them that Mr. Sweiha was their

18   friend, came to the home to meet with Mr. Wahba and obtain his blessing, was having a manic

19   episode and had psychological problems, and had locked himself in the bathroom. They described

20   the bathroom's location and how Mr. Wahba was bedridden and on life support.[4] Deputy Garrigan

21

22   _____

     [2] Mot. – ECF No. 60; Opp'n – ECF No. 62. The deputies also moved for summary judgment, and the
23   plaintiff did not oppose the motion, on the plaintiff's Fourteenth Amendment claim of inadequate
     medical care in custody.

24   [3] Edwards Dep., Ex. A to Hom Decl. – ECF No. 60-1 at 11 (pp. 23:25–24:5, 24:12–14); Marapao
     Dep., Ex. B to *id.* – ECF No. 60-1 at 47 (pp. 20:24–21:6); Garrigan Dep., Ex. C to *id.* – ECF No. 60-1
25   at 71 (p. 21:4–10); Shannon Dep., Ex. D to *id.* – ECF No. 60-1 at 96 (pp. 20:24–21:12); Armstrong
     Dep., Ex. E to *id.* – ECF No. 60-1 at 123 (p. 22:13–19). The dispatch audio can be heard on the videos
26   from the officer's body cameras.

27   [4] Edwards Decl., Ex. I to *id.* – ECF No. 60-1 at 298 (¶ 3); Edwards Dep., Ex. A to *id.* – ECF No. 60-1
     at 11 (pp. 25:19–26:2, 27:6–10); Garrigan Dep., Ex. C to *id.* – ECF No. 60-1 at 72 (p. 23:16–19);
28   Marapao Dep., Ex. B to *id.* – ECF No. 60-1 at 47–48 (pp. 21:7–25:23); Sweiha Dep., Ex. 1 to Buelna
     Decl. – ECF No. 62-1 at 12–14 (pp. 128:14–30:22); Ransfer Video, Ex. G-3 to Hom Decl.

United States District Court
Northern District of California

1    used his car's loudspeaker system to tell Mr. Sweiha (many times) to leave the residence. He did

2    not.[5] After about 15 minutes, deputies — including Deputy Edwards and his dog — went into the

3    house.[6] While standing outside the front door, Deputy Edwards saw Mr. Sweiha move from the

4    bathroom to the hall and toward the bedroom.[7] Mr. Sweiha left the bathroom, taking a statute of an

5    angel with him, and went to the priest's bedroom, where the priest was in bed.[8] The deputies went

6    to the closed bedroom door.[9] From behind the closed door, Mr. Sweiha, with a raised voice, said

7    repeatedly that this was a hostage situation, he had a knife to Mr. Wahba's neck, and would kill

8    him.[10] Deputy Edwards warned Mr. Sweiha twice to come out of the bedroom or he would deploy

9    his police dog.[11] Mr. Sweiha responded that he would stab the dog.[12] As the officers positioned

10    themselves to enter the bedroom, Mr. Sweiha opened the bedroom door and threw the angel statue

11    into the hallway, where it shattered about three feet in front of the deputies.[13] Mr. Sweiha then

12    went back into the bedroom and closed the door.[14]

13

14

---

15    [5] Edwards Dep., Ex. A to *id.* – ECF No. 60-1 at 12 (p. 29:9–15); Marapao Dep. Ex. B to *id.* – ECF No. 60-1 at 48 (pp. 22:20–25:23); Garrigan Dep., Ex. C to *id.* – ECF No. 60-1 at 72 (p. 22:6–23); Shannon

16    Dep., Ex. D to *id.* – ECF No. 60-1 at 97 (pp. 22:6-23:5); Armstrong Dep., Ex. E to *id.* – ECF No. 60-1 at 123 (pp. 24:1–25:6).

17    [6] Ransfer Video, Ex. G-3 to *id.*

   [7] Edwards Decl., – Ex. I to *id.* – ECF No. 60-1 at 298 (¶ 5).

18    [8] Marapao Dep., Ex. B to *id.* – ECF No. 60-1 at 47–48 (pp. 21:7–25:23); Garrigan Dep., Ex. C to *id.* –

19    ECF No. 60-1 at 72 (p. 23:2–4); Sweiha Dep., Ex. 1 to Buelna Decl. – ECF No. 62-1 at 15–16 (pp. 143:24–44:12); *see, e.g.*, Garrigan Video, Ex. G-4 to Hom Decl.

20    [9] Edwards Dep., Ex. A to *id.* – ECF No. 60-1 at 12 (p. 27:19–22); Armstrong Dep., Ex. E to *id.* – ECF No. 60-1 at 123 (pp. 24:1–25:6).

21    [10] Edwards Decl., Ex. I to *id.* – ECF No. 60-1 at 299 (¶ 6); Edwards Dep., Ex. A to *id.* – ECF No. 60-1

22    at 12 (p. 27:19–22); *see, e.g.* Armstrong Video, Ex. G-2 to *id.*

   [11] Edwards Decl., Ex. I to *id.* – ECF No. 60-1 at 299 (¶ 6); Edwards Dep., Ex. A to *id.* – ECF No. 60-1

23    at 13 (p. 30:7–11).

24    [12] Edwards Decl., Ex. I to *id.* – ECF No. 60-1 at 299 (¶ 6); Edwards Dep., Ex. A to *id.* – ECF No. 60-1 at 13 (p. 30:7–11).

25    [13] Edwards Decl., Ex. I to *id.* – ECF No. 60-1 at 299 (¶ 6); Marapao Dep., Ex. B to *id.* – ECF No. 60-1 at 30 (p. 32:1–17); Armstrong Dep., Ex. E to *id.* – ECF No. 60-1 at 123–24 (pp. 25:18–27:10);

26    Shannon Dep., Ex. D to *id.* – ECF No. 60-1 at 97–98 (pp. 23:2–28:10); Sweiha Dep., Ex. F to *id.* – ECF No. 60-1 at 175–77, 179–81, 184 (pp. 126:14–34:20, 142:5–52:9, 164:19–23).

27    [14] Edwards Decl., Ex. I to *id.* – ECF No. 60-1 at 299 (¶ 6); Shannon Dep., Ex. D to *id.* – ECF No. 60-1 at 97 (p. 23:12–19); Armstrong Dep., Ex. E to *id.* – ECF No. 60-1 at 123–24 (pp. 25:18–27:10);

28    Sweiha Dep., Ex. 1 to Buelna Decl. – ECF No. 62-1 at 18–19 (pp. 148:10–49:12).

The deputies then decided to open the bedroom door and deploy the police dog off leash to secure Mr. Sweiha. The door was locked, and they broke it open.[15] Mr. Sweiha was on the side of Mr. Wahba's bed, holding what deputies thought was a metal object, but what was actually a wooden cross.[16] The video footage does not show the dog or Mr. Sweiha by the bed but it depicts the following. Mr. Wahba was in a hospital bed. The deputies told Mr. Sweiha several times to "drop it," meaning the perceived weapon. Mr. Sweiha, with his hands up and in front of his body, then said repeatedly, "I'm sorry, I'm sorry," as he moved down to the floor. Then he began screaming, presumably because the dog was biting him. The video shows the back of Mr. Sweiha's legs and feet, meaning, he was on his stomach, and the audio reflects that he was being handcuffed. Then, a deputy said, "call your dog, stand by, stand by, I got his arm" and, again, "call your dog." After Deputies Armstrong and Shannon handcuffed Mr. Sweiha, Deputy Edwards ordered his dog to release his bite. The incident — from entry to release of the bite — lasted about 30 seconds.[17] After the incident, the deputies saw several potential weapons in the bedroom: scissors, a wrench, and the wooden cross.[18]

The only material differences in the deputies' account and Mr. Sweiha's account is how the dog bit Mr. Sweiha (information that is not fully on the video).

The deputies contend that the dog entered the bedroom, ran to the side of the bed, and bit Mr. Sweiha on his left arm, causing him to drop the object in his right hand.[19] Mr. Sweiha tried to pull

---

[15] *See, e.g.*, Edwards Decl., Ex. I to Hom Decl. – ECF No. 60-1 at 299 (¶ 7); Edwards Dep., Ex. A to *id.* – ECF No. 60-1 at 12–13 (pp. 27:23–33:25); Shannon Video, Ex. G-1 to *id.*

[16] *See, e.g.*, Edwards Decl., Ex. I to *id.* – ECF No. 60-1 at 299 (¶ 7); Edwards Dep., Ex. A to *id.*. – ECF No. 60-1 at 14–15 (pp. 37:9–39:10).

[17] Shannon Video, Ex. G-1 to *id.;* Armstrong Video, Ex. G-2 to *id.*; Garrigan Video, Ex. G-4 to *id.*; Marapao Video, Ex. 7 to Buelna Decl. – ECF No. 62-7; *see also* Edwards Dep., Ex. A to Hom Decl. – ECF No. 60-1 at 15–16, 22 (pp. 41:13–43:11, 69:3–23).; Shannon Dep., Ex. D to *id.* – ECF No. 60-1 at 99–100 (pp. 32:10–37:19); Sweiha Dep., Ex. F to *id.*– ECF No. 60-1 at 179–181 (pp. 142:5–52:9).

[18] Shannon Dep., Ex. D to *id.* – ECF No. 60-1 at 98 (pp. 27:15–28:10); Picture of Cross, Ex. G-5 to *id.* – ECF No. 60-1.

[19] Edwards Decl. Ex. I to *id.* – ECF No. 60-1 at 299–300 (¶ 8); Edwards Dep., Ex. A to *id.* – ECF No. 60-1 at 15 (pp. 38:2–23, 39:1–14); Shannon Depo, Ex. D to *id.* – ECF No. 60-1 at 99–103 (pp. 32:10–37:19, 41:13–42:9, 42:25–43:11, 49:12–18); Armstrong Dep., Ex. E to *id.* – ECF No. 60-1 at 126–127 (pp. 36:3–38:15).

United States District Court
Northern District of California

1  away from the dog by moving his left arm from side to side.[20] The dog kept hold of Mr. Sweiha and

2  pulled him to the ground. Mr. Sweiha landed on his back and struggled with the dog.[21] Deputies

3  Armstrong, Shannon, and Edwards then entered the bedroom and ordered Mr. Sweiha onto his

4  stomach.[22] Mr. Sweiha complied and said, several times, "I'm sorry."[23] After Deputies Armstrong

5  and Shannon handcuffed Mr. Sweiha, Deputy Edwards ordered his dog to release his bite.[24]

6       According to Mr. Sweiha, the dog tugged his sleeve but did not bite him initially. In response,

7  Mr. Sweiha dropped the wooden cross.[25] The deputies then entered the room and surrounded Mr.

8  Sweiha. The dog continued to tug at his sleeve.[26]

9       And then the dog was getting my sleeve, I started saying, "I'm sorry, I'm sorry, I'm sorry."
10  I put my hands up, but he was grabbing me from my sleeves. And then one of the cops
   took the dog and he positioned the dog head to bite me from my arm, and the dog bit me
11  from my left arm and he bit my biceps, my triceps, and he kept biting, going back and
   forth, back and forth, back and forth.[27]

12  The deputies allowed the dog to bite and tear at Mr. Sweiha's arm while they handcuffed him.[28]

13       Mr. Sweiha received medical care for his wounds at a hospital emergency room. When the

14  hospital cleared him, the deputies booked him into Alameda County's Santa Rita jail on state

15  charges of assault with a deadly weapon, criminal threats, brandishing a weapon, and obstructing a

16

17

---

18  [20] Edwards Decl., Ex. I to *id.* – ECF No. 60-1 at 299–300 (¶ 8); Edwards Dep., Ex. A to *id.* – ECF No. 60-1 at 15 (pp. 39:20-40:1).

19  [21] Edwards Decl., Ex. I to *id.* – ECF No. 60-1 at 299–300 (¶ 8); Edwards Dep., Ex. A to *id.* – ECF No. 60-1 at 15 (p. 39:11–14).

20
21  [22] Edwards Decl., Ex. I to *id.* – ECF No. 60-1 at 299–300 (¶ 8); Edwards Dep., Ex. A to *id.* – ECF No. 60-1 at 16 (p. 42:2–9).

22  [23] Edwards Decl., Ex. I to *id.* – ECF No. 60-1 at 299–300 (¶ 8); Armstrong Dep., Ex. E to *id.* – ECF No. 60-1 at 126–27 (pp. 36:3–38:15); Shannon Dep., Ex. D to *id.* – ECF No. 60-1 at 99–100 (pp. 32:10–37:19).

23
24  [24] Edwards Decl., Ex. I to *id.* – ECF No. 60-1 at 299–300 (¶ 8); Edwards Dep., Ex. A to *id.* – ECF No. 60-1 at 15–16, 25 (pp. 41:13–42:9, 42:25–43:11, 79:18–23); Armstrong Dep., Ex. E to *id.* – ECF No. 60-1 at 126–127 (pp. 36:3-38:15); Shannon Depo, Ex. D to *id.* – ECF No. 60-1 at 99–100 (pp. 32:10–37:19); Sweiha Dep., Ex. F to *id.* – ECF No. 60-1 at 179 (pp. 142:5–152:9).

25
26  [25] Sweiha Dep., Ex. 1 to Buelna Decl. – ECF No. 62-1 at 18–19 (pp. 148–149).

27  [26] *Id.* at 19 (pp. 149–150).

   [27] *Id.*

28  [28] *Id.* at 20–22 (pp. 150–152).

peace officer.[29] *See* Cal. Penal Code §§ 245(a)(1), 422, 417(a), and 148(a)(1). A few days later, he was transferred to a psychiatric hospital.[30] Ultimately, his wounds healed but Mr. Sweiha had large scars and recently had surgery to repair them.[31]

The operative complaint has the following claims: (1) excessive force in violation of the Fourth Amendment and 42 U.S.C. § 1983; (2) a *Monell* claim under § 1983 for the County's allegedly unconstitutional policies regarding the treatment of pretrial detainees with mental-health issues; (3) a claim for deficient medical treatment in violation of the Fourteenth Amendment and § 1983; and (4) a violation of Title II of the ADA predicated on the County's alleged failure to accommodate Mr. Sweiha during his arrest and subsequent confinement.[32] The court previously dismissed the *Monell* claim.[33] The defendants moved for summary judgment on the remaining claims.[34] The plaintiff did not oppose the motion for summary judgment on the Fourteenth Amendment claim or on the ADA claim to the extent that it is predicated on his conditions of confinement and pursues only his claims for excessive force and the ADA claim as it relates to the use of force.[35] The court held a hearing on January 21, 2021. All parties consented to magistrate-judge jurisdiction.[36]

**SUMMARY-JUDGMENT STANDARD**

The court must grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Material facts are those that may affect the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute about

[29] Edwards Decl., Ex. I to Hom Decl. – ECF No. 60-1 at 300–01 (¶ 9); Sweiha Dep., Ex. 1 to Buelna Decl. – ECF No. 62-1 at 23, 24–28 (pp. 155:4–14; 190:7–91:23; 196:15–98:5).

[30] Sweiha Dep., Ex. 1 to Buelna Decl. – ECF No. 62-1 at 26–28 (pp. 196:15–98:5).

[31] *Id.* at 24–25 (pp. 190:7–91:23).

[32] FAC – ECF No. 24.

[33] Order – ECF No. 39; Mot. – ECF No. 60 at 28–29 (raising *Monell* claim); Opp'n – ECF No. 62 at 15, n. 2 (conceding that the court dismissed it and making no argument).

[34] Mot. – ECF No. 60.

[35] Opp'n – ECF No. 62 at 25–27.

[36] Consents – ECF Nos. 7, 11.

a material fact is genuine if there is enough evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* at 248–49.

The party moving for summary judgment has the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]he moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) ("When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'") (quoting *Celotex*, 477 U.S. at 325).

If the moving party meets its initial burden, the burden shifts to the non-moving party to produce evidence supporting its claims or defenses. *Nissan Fire*, 210 F.3d at 1103. The non-moving party may not rest upon mere allegations or denials of the adverse party's evidence but instead must produce admissible evidence that there is a genuine issue of material fact for trial. *Devereaux*, 263 F.3d at 1076. If the non-moving party does not produce evidence that there is a genuine issue of material fact, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323.

In ruling on a motion for summary judgment, inferences drawn from the underlying facts are viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## ANALYSIS

The defendants move for summary judgment on the excessive-force and ADA claims, essentially on the ground that the use of force was reasonable, the deputies are entitled to qualified immunity on the excessive-force claims, and no evidence suggests that the deputies acted with the deliberate indifference needed to establish an ADA claim. Mr. Sweiha contends that the deputies' continued use of force after his surrender violates the Fourth Amendment, does not allow them

United States District Court
Northern District of California

1    qualified immunity, and precludes summary judgment on the ADA claim.[37] Because the parties

2    dispute material facts — whether Deputy Edwards appropriately deployed the dog until Mr.

3    Sweiha was in their custody or instead sicced the dog on him after he surrendered — the court

4    denies summary judgment to Deputy Edwards on the excessive-force claim. The court grants

5    summary judgment to the other defendants on the excessive-force claim because they are entitled

6    to qualified immunity. The court grants the County summary judgment on the ADA claim because

7    there is no evidence that the deputies acted with deliberate indifference.

8          The parties agree that under *Graham v. O'Connor*, the initial decision to deploy the dog was a

9    reasonable response to the circumstances that confronted the deputies. 490 U.S. 386, 396–97

10   (1989). But the reasonableness of the continued use of force is disputed and requires the fact

11   finder to sift through the evidence, draw inferences from it, and resolve credibility issues. *Smith v.*

12   *City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005); *see Rodriguez v. City of Fresno*, 819 F. Supp. 2d

13   937, 946 (E.D. Cal. 2011) (collecting and analyzing cases). For this reason, the Ninth Circuit "has

14   held on many occasions that summary judgment . . . in excessive force case should be granted

15   sparingly." *Glenn v. Washington Cty.*, 673 F.3d 864, 872 (9th Cir. 2011).

16         The body camera footage is consistent with both parties' accounts to some extent, but it is not

17   dispositive. One cannot see the dog or how he seized Mr. Sweiha. The footage — showing Mr.

18   Sweiha with his arms raised, his apologies, and his subsequent screams when the dog bit him — is

19   consistent with Mr. Sweiha's account that he surrendered and complied with the deputies' orders.

20   Thus, there are disputed material facts — about whether Mr. Sweiha was surrendering — that

21   preclude summary judgment. *See Banks-Reed v. Bay Area Rapid Transit*, No. 18-CV-05755-YGR,

22   2019 WL 6050753, at *4–5 (N.D. Cal. Nov. 15, 2019) (genuine disputes of material fact existed

23   about whether the plaintiff was surrendering that precluded a finding that the officer's use of

24   deadly force was objectively reasonable). Moreover, Mr. Sweiha contends that the dog bit him

25   only after he surrendered and only after Deputy Edwards positioned the dog on him so that he

26   would bite him. Viewing the evidence in the light most favorable to Mr. Sweiha, a reasonable

27

28   _____
     [37] Opp'n – ECF No. at 62 at 20–24.

United States District Court
Northern District of California

1    factfinder could conclude that the continued use of force became objectively unreasonable when

2    Mr. Sweiha complied with the deputies' instructions and Deputy Edwards nonetheless caused the

3    dog to bite Mr. Sweiha. *Hartsell v. Cty. of San Diego*, 802 F. App'x 295, 296 (9th Cir. 2020).

4        These facts also preclude qualified immunity for Deputy Edwards. "'[T]he doctrine of

5    qualified immunity protects government officials from liability for civil damages insofar as their

6    conduct does not violate clearly established statutory or constitutional rights of which a reasonable

7    person would have known.'" *Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011) (en banc)

8    (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). For more than 20 years, it has been

9    "clearly established that excessive duration of [a dog] bite or improper encouragement of a

10   continuation of an attack by officers could constitute excessive force that would be a constitutional

11   violation." *Hartsell*, 802 F. App'x at 296 (cleaned up) (quoting *Watkins v. City of Oakland*, 145

12   F.3d 1087, 1093 (9th Cir. 1998); *see also id.* (quoting *Mendoza v. Block*, 27 F.3d 1357, 1362 (9th

13   Cir. 1993), for its example of excessive force in the form of a deputy's "siccing a canine on a

14   handcuffed arrestee who has fully surrendered and is completely under control") (cleaned up);

15   *Watkins*, 145 F.3d at 1093 ("[E]xcessive duration of a bite and improper encouragement of the

16   attack by offers could constitute excessive force.").

17       The other deputies are entitled to qualified immunity. After Deputy Edwards deployed his dog,

18   the entire encounter took seconds. No facts suggest that the deputies had any role — let alone an

19   integral-participant role — in Deputy Edwards' alleged conduct in positioning the dog so that he

20   would bite Mr. Sweiha. *Burns v. City of Concord*, No. 14-cv-00535-LB, 2017 WL 5751407, at

21   *10 (Nov. 28, 2017). Moreover, they had no opportunity to intercede. *Id.* at *11.

22       For the same reasons, the court grants summary judgment to the County on the ADA claim to

23   the extent that the claim is predicated on the acts of deputies other than Deputy Edwards. Mr.

24   Sweiha's claim is that the deputies knew that he had mental-health issues, and they did not

25   accommodate that disability when they did not accept his surrender and instead sicced the dog on

26   him.[38] *Sheehan v. City and Cty. of San Francisco*, 743 F.3d 1211, 1232 (9th Cir. 2014) (ADA

27

28   ─────────────────
     [38] *Id.* at 25.

United States District Court
Northern District of California

1    claim applies to claims of wrongful arrest), *reversed in part on other grounds and cert. dismissed*

2    *in part*, 135 S. Ct. 1765, 1773–1774 (2015) (addressed only § 1983 claim and not ADA claim).

3    But the other deputies had no part in Deputy Edward's alleged conduct.

4        The court also grants summary judgment on the ADA claim based on Deputy Edwards'

5    conduct because there is no evidence that he acted with the requisite scienter.

6        "To recover monetary damages under Title II of the ADA, a plaintiff must prove intentional

7    discrimination on the part of the defendant." *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1138 (9th

8    Cir. 2001) (citation omitted). To prove intentional discrimination, the plaintiff must show that the

9    defendant acted with deliberate indifference. *Id*. at 1139. "When the plaintiff has alerted the public

10   entity to his need for accommodation (or where the need for accommodation is obvious, or

11   required by statute or regulation), the public entity is on notice that an accommodation is required,

12   and the plaintiff has satisfied the first element of the deliberate indifference test." *Id*. "[D]eliberate

13   indifference does not occur where a duty to act may simply have been overlooked, or a complaint

14   may reasonably have been deemed to result from events taking their normal course." *Id*. "Rather,

15   in order to meet the second element of the deliberate indifference test, a failure to act must be a

16   result of conduct that is more than negligent, and involves an element of deliberateness." *Id*.

17       Here, the facts do not approximate those in *Sheehan*. In *Sheehan*, a schizophrenic resident of a

18   group home threatened to kill the officers if they came into her room. 743 F.3d at 1218–19. The

19   officers — instead of forcing their way into the room and shooting the resident after she threatened

20   them with a knife — allegedly could have defused the situation, waited for backup, and employed

21   less confrontational techniques. *Id.* at 1233. The need for an accommodation was not obvious (in

22   the way that an accommodation for a schizophrenic woman in a group home is). Put another way,

23   Deputy Edwards' alleged behavior is excessive force, but nothing suggests that he acted in any

24   way because of Mr. Sweiha's disability. The fact disputes about whether the force was justified

25   create triable issues of fact only about the excessive-force claim, not the ADA claim.

26

27

28

United States District Court
Northern District of California

Finally, the defendants intimate that Mr. Sweiha's account is delusional.[39] This does not change the outcome. There is some authority for the proposition that if a plaintiff's only evidence of wrongful seizure and excessive force is his own self-serving testimony, and the testimony is incredible, it does not create a fact dispute. *See Jeffreys v. New York*, 426 F.3d 549, 551–55 (2nd Cir. 2005). The testimony here is not riddled with the inconsistencies of *Jeffreys*.

## CONCLUSION

The court grants summary judgment to the County on the ADA claim, grants summary judgment on the ground of qualified immunity to all defendants except Deputy Edwards, grants the unopposed motion on the Fourteenth Amendment claim related to Mr. Sweiha's conditions of confinement, and denies Deputy Edwards' motion for summary judgment on the excessive-force claim.

**IT IS SO ORDERED.**

Dated: January 28, 2021

LAUREL BEELER
United States Magistrate Judge

---

[39] Reply – ECF No. 65 at 9–12.